Linda LADD, John Kowalsky, and Linda LaPlante, individually and on behalf of all persons similarly situated,

v.

Joyce A. THOMAS, in her capacity as Commissioner of the State of Connecticut Department of Social Services.

No. 3:94CV1184 JBA.

United States District Court, D. Connecticut.

March 31, 1998.

Shelley A. White, Sheldon V. Toubman, New Haven Legal Assistance, New Haven, CT, for plaintiffs.

Peter L. Brown, Attorney General's Office, Hartford, CT, Richard J. Lynch, Judith A. Merrill, Attorney General's Office, Hartford, CT, for defendants.

**Ruling on the Plaintiffs' Motion for Permanent Injunction and to Amend Summary Judgment Ruling [Docs. # 60–1, # 60–2]**

ARTERTON, District Judge.

Plaintiffs Linda Ladd, John Kowalski, and Linda LaPlante are Medicaid recipients who have brought suit against the defendant Joyce A. Thomas,[1] in her capacity as Commissioner of the Connecticut State Department of Social Services (DSS) for alleged violations of federal Medicaid law in connection with the processing of requests for prior authorization of durable medical equipment (DME). The Court has previously ruled on the parties' cross-motions for summary judgment, and the plaintiffs now move for an amendment of that ruling and for a permanent injunction [docs. # 60–1, # 60–2].

### Facts

The facts in this case have been summarized in previous rulings of this Court and will only be briefly recapitulated herein. (*See* Ruling on Plaintiffs' Motion for Class Certification (Doc. 15), Ruling on Parties' Cross–Motion for Summary Judgment (Doc. 48)).

The Connecticut Department of Social Services ("DSS") participates in a joint state and federal medical assistance program for certain categories of low-income individuals, under Title XIX of the Social Security Act § 1396, *et seq*, also known as "Medicaid." Under the Medicaid program, DSS pays for a wide variety of medical services for persons who are financially and categorically eligible for these services. One such category of Medicaid-eligible individuals is adults with severe disabilities who are unable to work due to a medical condition or combination of conditions. 42 U.S.C. § 1396d(a).

Federal law mandates that participating states provide home health services including durable medical equipment (DME) to Medicaid participants where such equipment is medically necessary. 42 C.F.R. § 440.70(b)(3). Under state Medicaid regulations, prior authorization for DME is required for all rentals regardless of cost, all replacement equipment and repairs, and any purchase item costing in excess of $100. Connecticut Medical Assistance Provider Manual ("Conn. MAP Manual"), § 189.F.II.a.

In its ruling on cross-motions for summary judgment, the Court granted in part and

---

1. Joyce A. Thomas has replaced Audrey Rowe as Commissioner of DSS since the initiation of this lawsuit.

denied in part each of the parties' motions for summary judgment, and entered a declaratory judgment stating that:

1) defendant is in violation of federal law when she does not provide reasonably prompt notice to Medicaid beneficiaries requesting prior authorization for DME that their requests have not been acted upon;

2) defendant is in violation of federal law when she does not provide notice to beneficiaries that a request for prior authorization has been approved in modified form; and

3) defendant is in violation of federal law when she does not provide notice to beneficiaries that a request for prior authorization has been denied orally.

The plaintiffs now seek for the Court to enter a permanent injunction enforcing the declaratory rulings of the summary judgment ruling, and to amend the summary judgment ruling 1) to impose specific deadlines for the defendant to act on requests for prior authorization of DME and for notifying recipients when vendors do not respond to pink slips, 2) to order the defendant to provide notice and opportunity for hearing of all denials of requests for prior authorization of DME, 3) to enjoin defendant from using "request for information" forms in any situation short of a request for specific additional current information.

### Discussion

The plaintiffs argue that further court-ordered relief is necessary in light of certain of the defendant's continuing practices, and to prevent any reversion by the defendant to practices that would be in violation of federal law. The defendant responds that she has instituted changes in accordance with the Court's summary judgment ruling that obviate the need for permanent injunctive relief, and any examples of practices not in accord with those changes have been aberrant and mistaken.

**1. Permanent Injunction with Regard to Declaratory Judgment**

■ Plaintiffs move the Court for entry of a permanent injunction enjoining the defendant from the practices declared illegal in the summary judgment ruling. In response, the defendant declares that she has "completely changed her process for dealing with prior authorization for DME," (Def.'s Br. in Opp. at 63), and is in compliance with the declarations of law made in this Court's previous ruling. Despite these changes in practice, the plaintiffs maintain that absent injunctive relief the defendant could revert to prior procedures.

■ "The standard for a permanent injunction is essentially the same as for a preliminary injunction, except that the plaintiff must actually succeed as to the merits." *Civic Assoc. of the Deaf of New York City v. Giuliani*, 915 F.Supp. 622, 631 (S.D.N.Y. 1996) (*citing Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)). "Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Even so, "the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Id.* In order to demonstrate the need for injunctive relief, the moving party must show irreparable harm, see *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir.1989), which requires a showing of an "immediate threat that the plaintiff will be wronged again," *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

Although the plaintiffs assert that the defendant may revert to her old practices, the Court prefers to rely on the persuasive force of the declaratory judgment. *See, e.g., Perez v. Ledesma*, 401 U.S. 82, 124, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring) ("Of course, a favorable declaratory judgment may nevertheless be valuable to the plaintiff though it cannot make even an unconstitutional statute disappear... The persuasive force of the court's opinion and judgment may lead [state officials] to reconsider their respective responsibilities toward

the statute."). In the absence of evidence to the contrary, the Court allows the defendant a good faith presumption of compliance with the spirit and letter of that declaratory judgment. The Declaratory Judgment Act provides that "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. The plaintiffs have a binding determination of what constitutes unlawful practices by the defendant. In the event that good faith in the defendant is no longer warranted, and plaintiffs' concerns about the defendant's willingness to comply with law develop into actual violations of law, plaintiffs' counsel's demonstrated effective advocacy and tenaciousness will no doubt attract the Court's prompt attention in remedying any such situation.

**2. Reasonable Promptness**

■ The plaintiffs further request that the Court amend its summary judgment ruling by imposing specific deadlines for the defendant to act on requests for prior authorization of DME and for notifying recipients when vendors do not respond to pink slips. This Court's summary judgment ruling specifically held that the defendant must act with reasonable promptness in acting on prior authorization requests. (*See* Ruling at 10). The Court further cautioned that if the parties could not agree to a time limit, the Court would impose one. (*See* Ruling at 14). Although neither the Medicaid Act nor state regulations define what is meant to act with "reasonable promptness", 42 U.S.C. § 1396a(a), where the state agency fails to promulgate regulations establishing an express time for responding to requests for prior approval, as here, "courts are uniquely suited to determining what is reasonable" under the Medicaid Act, *Cornelius v. Minter*, 395 F.Supp. 616, 621 (D.Mass.1974). Absent an agreement by the parties establishing a time limit, the Court balances the recipients' interest with the state's in determining what constitutes reasonable promptness. *See*

*Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

The defendant submits that 30 working days is a reasonable length of time in which to process non-urgent[2] requests for prior authorizations. According to an affidavit by Julie Pollard, the Director of the Medical Administration Operations Division for the Department of Social Services, the defendant can process such paperwork in as little as 13 working days, but natural fluctuations in volume of requests can affect the timeliness of turn-around time. (*See* Aff. of Pollard ¶ 11). Plaintiffs propose that 21 calendar days is more than enough to accommodate such authorizations. *See Kessler v. Blum*, 591 F.Supp. 1013, 1031–32 (S.D.N.Y.1984) (imposing 21–day time limit); *see also McMahon v. Minter*, No. 3251 (Sup.Ct.Mass., Feb. 24, 1975) (approving consent decree establishing 15–day limit).

The Court determines that, in light of defendant's representations that such approvals can be accomplished in as little as 13 days, 20 working days should be sufficient to accommodate any natural fluctuation in volume of requests.

**3. Notice of Denials of Requests for Prior Authorization of DME**

■ The plaintiffs further request an order requiring the defendant to provide notice of all denials of requests for prior authorization of DME. The plaintiffs contend that such an order is necessary because the defendant has in the past argued that she is not legally obligated to provide such notice to applicants, and that applicants are not legally entitled to the opportunity for a hearing. (*See* Def.'s May 27, 1997 Mem. in Opp. at 4). Such a position, were the defendant to act in accordance with it, would violate federal regulations.

Federal regulations specifically provide hearing rights to applicants for benefits:

(a) The agency must grant an opportunity for a hearing to:

(1) Any *applicant* who requests it because his claim for services is *denied or is*

---

**2.** Defendant has adopted new procedures with respect to urgent requests that, the plaintiff concedes, appear to be acceptable. (Pls.' Reply Br. at 10 n. 7).

*not acted upon with reasonable promptness;*

(2) Any recipient who requests it because he or she believes the agency has taken an action erroneously.

42 C.F.R. § 431.220 (emphasis added). The Second Circuit has explained that:

Medicaid *applicants* and recipients are entitled to fair hearing rights when a decision is made by a state agency that adversely affects their right to receive benefits. The Medicaid statute, 42 U.S.C. § 1396a(a)(3), requires that the state plan must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistant under the plan is *denied or not acted upon with reasonable promptness.*"

*Catanzano v. Dowling,* 60 F.3d 113, 117 (2d Cir.1995) (emphasis added).

However, the plaintiffs have not shown that the defendant is not providing such notice and opportunity for hearings to applicants who have been denied services. Rather, they contend that the defendant's legal argument suggest that she will not comply in the future.

The Court prefers to give the defendant the benefit of the doubt that she will continue to comply with federally-mandated notice and hearing requirements. Moreover, Defendant's Exhibit B.1, a sample notice of denial of medical services, specifically provides that "If you are not satisfied with the action taken, you have the right to appeal and request a Fair Hearing *within 60 days from the date of this notice,*" (Def.'s Ex. B.1 (emphasis original)), thus illustrating that the defendants are currently providing such notice and opportunity for hearings to applicants. Plaintiffs' critique of this form does point out potential deficiencies, such as the small type size. However, it is beyond the scope of the current case for the Court to assess the adequacy or use of this particular form.

In the event that the Court's good faith in the defendant proves to be unjustified, and the issue of notice and hearing rights to applicants who have been denied services does become an actual controversy, the Court will retain jurisdiction pursuant to the Court's power to grant further relief under 28 U.S.C. § 2202, and is confident that the plaintiffs' able and attentive counsel will timely bring the matter to the Court's attention.

### 4. Misuse of "Request for Information" forms

█ Finally, the plaintiffs request that the Court enjoin the defendants from using "request for information" forms in any situation short of a request for specific additional current information. The defendant represents that of the approximately 225 request for prior authorizations handled per week, the plaintiffs can only point to two cases in which there has been a problematic use of the so-called pink slips, and these two cases, if anything, constitute mistakes not representative of proper procedure. Again, the Court prefers to rely on a presumption of good faith on the part of the defendant that these examples in fact were mistakes. However, that good faith that the defendant currently enjoys will rapidly dissipate in the event of future "mistakes."

### Conclusion

Accordingly, the Court declines to enter permanent injunctive relief on the current record. The Court's Ruling on Summary Judgment is hereby supplemented to declare that 20 working days constitutes the period of reasonable promptness in which requests for prior authorization must be acted on.

Plaintiffs' Motion for Permanent Injunction [doc. 60–1] is **DENIED.** Plaintiffs' Motion to Amend Summary Judgment Ruling [doc. 60–2] is GRANTED in part, and DENIED in part. The Clerk is hereby directed to close this case.

**IT IS SO ORDERED.**